The next case is the U.S. v. Garcia and this is Heroy. Good morning, Your Honor. Rob Heroy for defendant Mr. Garcia. In this case we have two distinct groups of issues we're dealing with. The first is whether or not there was improper judicial notice when the judge took judicial notice of a document that his court found on the Internet during a break. Did you also ask the court to take judicial notice of a document you proffered from the Internet? Yes, Your Honor. And the difference would be? I'm sorry, Your Honor. The document that we found, I believe, was we asked the court to take judicial notice of the USCIS field manual. The court declined to take judicial notice of that. Okay. Thank you. You're welcome, Your Honor. I thought they did notice parts of the manual. I thought so, too, actually. They didn't? The court didn't? I don't believe so, Your Honor. I was arguing that. The argument is that after he took judicial notice that you offered up some from the manual that he also took. That's how I read the file. I've never seen that brief before, Your Honor. That's a good answer but not good enough. Here's the problem. We have seen the brief. No, but wait a second now. I thought, and I think we all think the same thing, that the judge, through his law clerk, found a website and took a page of that that he wanted to take judicial notice of. But I thought then because he had done that, you asked that he also take judicial notice of something from basically the field manual. Is that not, are you sure that's not right? We did ask that he take judicial notice of a section of the field manual and he declined that invitation. He declined it? Yes, Your Honor. Okay. And we're dealing with a document. It was not introduced by the government. What is your biggest problem with what's in that document? Your Honor. Specifically. Specifically, the document, there are two website pages here. There's one that says, during your naturalization interview, a USCIS officer will ask you questions about your application and background. You also take an English and civics test unless you qualify for exemption or waiver. And then it goes on there. And the issue is. What is your objection to what, what is your objection, what words do you object to? I think the question is, what about, what is it about the content that you think was problem, caused problems for your client? Absolutely, Your Honor. I think the way that the manual puts things, it groups everything that happens during that process as part of the interview. The English test, the questions about your background, everything else. And whether or not something was an interview wound up being one of the key parts of this case because it's a question of, did he lie at an interview? Is your argument that that compilation of what happens, you think somebody might be confused to believe that any part thereof is an interview. Where you say the interview is a distinct and separate part of the process. That is exactly the argument. So in other words, you say your client can take the English test and take the American government test, but that doesn't mean that he has been interviewed yet. That's exactly right, Your Honor. Isn't there evidence, though, from which the jury could find that your client had been interviewed in May? Yes, Your Honor. Isn't there evidence from which the jury could find that your client had been interviewed? Yes, Your Honor. Then why don't you lose? Because, Your Honor, there's evidence there, but I think the evidence cuts both ways. And the judge… Well, isn't that the quintessential jury question? Exactly, Your Honor. I think this comes down to… Well, if you say exactly, that means you lose. Maybe I didn't understand the question properly, then, Your Honor. I think you do. You're answering them consistently. But isn't there… You may say there's evidence that cuts the other way, but isn't there evidence from which the jury could find that on… and that May interaction, he, your client, was in fact interviewed. No matter how small you cut interview, there was a discussion with him about something. I think there's a reasonable interpretation that it could be that way. And I'm willing to concede that point, Your Honor, but I don't think that gives up the argument. I'm sorry, no. Please finish your answer. I'll tell you why. It gives up the argument when he answers his last time there when he comes in to be sworn in that he hadn't committed any criminal activity since his first interview. You give up that argument, then. Your Honor, I disagree because I think while there is a possibility… I don't see how you can. I understand your argument. You say when he was… I know this is your argument. The last time he's asked, since you were first interviewed, have you committed a crime, so forth and so on. You say the first interview wasn't until November the 9th. But in fact, something happened in May. Now, I thought you just… and there's evidence that you conceded would allow the jury to find there was an interview of your client in May. In which case, that would be his first interview the jury could find, and therefore, he'd made a misstatement about his criminal conduct since his first interview. Your Honor, I think that that's a question the jury should have decided and not… They did decide it. They did, Your Honor, but they decided in part based on documents that were provided to them by the judge. My question went back to that. It's a two-part question. What's wrong with judicially noticing information on government websites? We actually do it a lot. I've written opinions where we've judicially noticed information from the Centers for Disease Control, for example. Why is that a problem? Or are you saying that that is not what the problem is? The problem is with the content, not the form? Yes, Your Honor. I think when we're talking… specifically what was taken judicial notice of on the website? Yes, Your Honor. It's the content, the second one. I was trying to say yes as in the second one, not a general yes or no. Okay, thank you. That's very helpful. Why, then, do you have a problem with the content? I think I understand. Tell me if I'm correct. It seems to me just sort of generalized information about the naturalization process. It says this happens, this happens. You'll get asked questions. What your argument seems to be is the fact that all of it is taken together might create an inference in some minds that all of those activities are part of an interview. Is that your argument? Exactly, Your Honor. But isn't that an inference? I'm not quite sure what the problem with that is. It's adverse to us. Well, I get that part. But why, I'm still not sure why information that may be construed against your client becomes objectionable for that reason alone. That's what I'm having trouble with. I think it's different than hard data that you might see when you look at, you know, the Center for Disease Control, that 42% of cases of X, Y, and Z. Actually, you would be surprised. There's also data on the Centers for Disease Control about processes. And this is just a process answer. This happens, this happens, this happens, this happens. And, Your Honor, I don't think, if we go straight to the rule, and I think we can decide this issue looking straight at the rule. We've got one, Part 1 of Rule 201B, information that's generally known within the territorial jurisdiction. I don't think that's an issue. But whether it can be accurately and readily determined from sources whose accuracy can't reasonably be questioned. And it was reasonably questioned by the defense here. It's accuracy? What about its accuracy is questioned? You're not objecting to the words. You're objecting to the perception that can be drawn from the organization. And that's another layer of problem for me. You see what I'm saying? You're not saying that, for instance, you don't dispute that part of it says a USCIS officer will ask you questions about your application. You're not objecting to that not being accurate. No, Your Honor. You're not actually objecting to any statement in there being inaccurate. Not a single statement, but I think the group of words together. It's the way they are organized that you're objecting to. Yes, Your Honor. The way that they're organized gives the impression, hey, the government's witnesses are right. You've got this sneaky defense lawyer who argued opening this isn't an interview. Well, they got that right. What's wrong with that? I'm not saying there's anything wrong with that, Your Honor. I'm teasing. Nothing at all. And you've got this sneaky defense lawyer that's trying to get these witnesses to say this or this. But I led by asking you what words do you object to? And then we've now, I think, you don't object to any particular words. You just object to how that could be read. I object to the structure, Your Honor. The way the words are organized gives the impression that this is all part of the interview, that the history test, the oath, that everything's part of the interview. Do you think the government needed this at all to win this case? I'm going to ask the government that, too. But do you think, it seems to me they don't. Didn't they have people testify that he was interviewed? I think that's a question that's impossible to say, Your Honor, because... Well, no, it's not impossible. Either somebody said it or they didn't say it in the record. It's not impossible. I think there's a reasonable possibility the jury could have come back the other way if they had not... I didn't ask you that. I thought we've already established there's evidence in the record from which the jury could decide that the May interaction was an interview. Yes, Your Honor. I think the government did need this in that case. The reason is because there's some doubt going back there as to whether or not this is an interview, and that's something the jury's going to go back there and discuss. We operate under the assumption the jury's going to listen to what the judge tells them. I don't know if they always do that or not, but that's the assumption we operate on. And if we're talking about... I don't want to make you spend all your time on that part of your argument. Do you think that is the critical part of your argument? Is there anything else you want to argue? I'm happy to stick to this, Your Honor, because I think it's a big deal. I'm happy if you're happy. All right, Your Honor. I think it's a big deal, especially in a case where we've had a judge that said, you know, this is a weak case. He wasn't sure when he sent it back to the jury. There's an issue about whether or not this is a tipping point. And if we're going to talk about rules that we're establishing, we can't allow judges to just take judicial notice of various things that the jury should decide on that aren't things that are of unquestioned accuracy. And you've gotten right back to the nub of my problem. There's nothing about it that is inaccurate, as you've conceded. And organization is just generic. They're simply painting in broad strokes what happens during the naturalization ceremony. I don't know what inference someone might or might not draw from it. But there's a difference in your argument between – and I tend to think we've hit a dead end with this. When I understand your point, I'm still unclear why you think the fact that some inference could be taken from the structure is a make or break problem. I think the structure defines all these things as part of an interview. When you read it during your naturalization interview, your USCIS officer will ask you questions about your application and background. You'll also take an English and civic – Do you have to get a favorable ruling from us on the judicial notice to win this case? No, Your Honor. How do you win it otherwise? Let's just leave that judicial notice aside. I understand you're not foregoing it, but just leave it aside. How do you win otherwise on count one or count two? How do you win? Well, I think this gets us into another issue. Just tell us. Just tell me. How do you win on count one on this record? We win on count one because we've got an officer who said, I'm not sure if I asked these questions. The officer interviewed in May may have asked the questions. Does count one involve November 9? Count one – I need to look at the timeline here, Your Honor. How about count one involves November 9? Yes, Your Honor. Count one involves November 9, and we have an officer who – I haven't gotten to my question yet. Now that we've established everybody's satisfaction that count one involves November 9, whatever took place, did Garcia sign a completed form in 400 which asked about arrests, and he doesn't disclose his September fraud arrest? Is that correct? I believe so, Your Honor. What else is there? Your Honor, we don't know that that question was asked on November 9. Does he sign a form which asks about arrests? Yes, Your Honor. Does he sign the form without disclosing his September arrest? Yes, Your Honor, but I don't know if that question was asked in November. Well, couldn't the jury take from that form – that form was introduced into evidence? Yes, Your Honor. Couldn't the jury look at it just the way Judge Duncan asked? He signed this form on November 9, and he didn't tell the truth on the box that followed question 21. He then gave a false statement. Why doesn't that support his conviction? I think there's too much speculation there for a reasonable jury to find. Speculation – he signed the form. You just admitted to her he signed the form, and the form is not correct. His answer is not correct. And the form's not correct, but we don't know that any of those questions were reviewed back in November, would you? Why did he sign the form? What is the only rational interpretation to take from the fact that he signed the form, which asks the specific question he did not answer truthfully, and then he signed it? I understand your points, Your Honor, but I think we're still operating under the assumption that he's asked those questions and then told the side. We operate under the assumption that he read the form that he signed, which included the question. Because the officer wasn't able to testify that they went over that part of the form, Your Honor. But the questions are on the form that he signed? The questions are on the form that he signed, Your Honor. Which includes question 23. Have you ever given false or misleading information to any U.S. government official while applying for any immigration benefit? Yes, Your Honor, that question is on the form and there is a checkmark. Well, even if there wasn't a checkmark, if the question's on the form and he signs it, I'm not sure what the rest of your argument could be. The argument is that we don't know whether or not that information was reviewed with him back in May or if he came back in November, and the officer doesn't ask any of those things. It doesn't matter if the jury can draw a reasonable inference from the fact that he signed the form that had that misinformation on it. How does that? You might offer evidence and argument maybe to counter that, but it doesn't counter the information of the form itself. I understand, Your Honor, but I think we're dealing with speculation that's not sufficient. What is speculative about his signature on the form? There's nothing speculative about his signature on the form. And that's all we're looking at. Yes, Your Honor, I think what's speculative is when you put it in context with Kevin Wynn's testimony. No, but after the jury convicts him, the government gets all inferences their way, so they would get an inference that the jury looked at this and read it just the way that we suggested it could be read. Isn't that right? I understand your point, Your Honor, but I think in conjunction with Officer Wynn's testimony, we're still dealing with so much speculation as to when the questions were asked that we don't… Let's talk about count two. Let's put that on the table. Yes, Your Honor. And explain your view, and then we'll ask Ms. Ray to deal with all of it. Instead of making you get back up and start on count two. Tell us count two. Why does that conviction not stand? Sure, Your Honor. I think count two is probably the more fun count to discuss. We've got issues of whether or not he was convicted or not after going in front of, I think, Magistrate Judge Kiesler to enter the rule. No, but that's not a question if he was first interviewed in May. If he was first interviewed in May, and you said there was evidence which a jury could find he was, then how do you win on that count? Because I think, Your Honor, as a matter of law, he was not interviewed. Where's as a matter of law? I understand, Your Honor, but I think looking at that as a reasonable juror, when you look at the USCIS field manual, when you look at the regulations in the INA, there's no evidence to show that he was interviewed. Yes, there is evidence. There's evidence because on that form from May, there's an instruction to bring back evidence, certified evidence, of the dismissal of those criminal charges, correct? Yes, Your Honor. That suggests somebody, as a reasonable inference, somebody talked to him about those charges, so that would have been an interview. And when he's told to come back, isn't the form that's sent to him said, report for a re-interview? Yes, Your Honor, and I think that gets back to the issue of judicial notice and how the judicially noticed documents may have impacted the jury's verdict. Is that a judicially noticed document? That's the document that was sent to him. No, that one was, Your Honor. That was why? That was just normal evidence, wasn't it? It was, Your Honor, but the judicial notice gave more credence to the government's arguments. I just have one quick question. Does it matter, in order to prevail, don't you have to prevail as to both counts? Yes, Your Honor. Count one and count two? Yes, Your Honor. It's not sufficient for you to obtain relief to only prevail on one. I mean, it would be nice to win one, but, you know. I understand, but my question is. As far as making a difference for Mr. Garcia, you know, we're all in. One or the other doesn't do us so much. Thank you. No. Thank you very much. You rule that you have some time at the very end. Ms. Ray, nice to see you. Glad to hear from you. Thank you, Your Honors. Amy Ray for the United States. May it please the Court. I would like to begin by correcting the misstatement, and undoubtedly unintentional, but Judge Cockburn, the District Court, did take judicial notice of certain portions of the field manual. Yes. And that appears on page 553 of the Joint Appendix. He states that he will take judicial notice of a portion of it. On pages 560-61, he says that again. And the actual page is at 738.1 in the Joint Appendix. Ms. Ray, are you surprised that the three of us read the record? I am not, but I'm just going to give you all the information I hope that you need to establish. In fact, in the District Court's order where the District Court denies the motion for new trial, the District Court actually relies on that field manual to establish that the interview first occurred on May 31, 2006. That that was the first interview. Does it matter for... Yes. For his status? It doesn't matter for purposes of his status whether it's one conviction or two, I mean whether... Not at all. Either one, and the government, the judgment is affirmed effectively. Right. Because he received concurrent sentences on count one and two, which was probation. Right. Any kind of special assessments or anything for each count? I don't believe so. I think everything was combined and he received the same punishment for both convictions. One gets you two. One gets you two. Okay. And so he has to show that an error infected or... both counts. All right. I can't remember, did you want this judicial notice taken? The government did not request it, Your Honor. Now, we did not object to it, but we did not request it. Do you wish that it hadn't been taken? Not really, honestly. I don't think it hurts our case one bit. I mean, it makes an appeal issue he spent 15 minutes talking about. Sure. You know, that's fine, but I don't think it was a problem at all. I think that Judge Cogburn was on firm ground when he decided to take judicial notice of a government website. This was information that is publicly disseminated to... rather, disseminated by a government agency to the public. And here's the thing about the information that he took judicial notice of. All it told us, all it told the jury, was what ordinarily occurs during a naturalization interview. This is what's at 738.3? 738. actually, I think 2 and 3, maybe, Your Honor. But yes, exactly. So what kind of discussion was there when the case was submitted to the jury about this? Was that discussed? Was there some dialogue about this is misleading? Because it looks like to me you could read it either way. Right. The defendant objected to it on basically the same grounds, saying that it in some way added to the evidence. Well, he objected to it, but did he tell the jury this is defective in some way? No. No. You mean in the closing arguments, Your Honor? Anywhere. Right. I don't believe so. I mean, I don't believe that the defendant ever actually challenged the accuracy of the information before the jury. But that's not what he's challenging now. I mean, it's that misleading nature of the structure of it that troubles, that he finds troubling. Right. I'm a little bit confused about what is, how that, I don't understand exactly what he means about the structure, honestly. I mean, what is in here is. But my only, to follow up on Judge Agee's question, did he make that argument about the misleading nature of the structure? Not to the jury, Your Honor. And I'm not even sure I would say he made it to the district court in quite that, those terms. But in any event, I do concede that he objected to it. I don't believe it was a problem because this information is just sort of what ordinarily occurs. It doesn't describe or interpret for the jury. What's the government's position on what the heck the interview is? Is it all of that? Is it part of that? What is the government's view of what an interview is? Your Honor, I would refer the court to Immigration Services Officer Barbie's testimony that it is all of it. It includes the test, the testing, the civics and the English testing, and the questions that are asked. So any of those constituent parts would in fact by itself be, would mean that he had been interviewed. Sure, yes. Absolutely. And that is in Barbie's testimony. And then... Quite frankly, it seemed like some of the agents didn't quite know what the heck was going on. And some of them were running businesses on the side. And it's like to me, it wasn't a great day for the government, what the agents said, in my view. And there was testimony kind of all over the board. But I thought the government's position was that the interview was all of those parts. And any of those parts. Yes. But I wasn't sure about the time I got through with the case. I thought maybe you thought the interview was just one separate part. No, but I think the more important question isn't really what the government thought, but what the jury could reasonably infer from the evidence that was presented. Page 194 to 95 of the Joint Appendix is where Barbie testifies that the examination is part of the interview. That's all we need. Does that matter for purposes of Count 1? No, because his argument on Count 1 is restricted to the, I believe he is arguing that Agent Wynn's testimony... I'm not sure what the argument is. I think I can help. I think that what he is arguing is that Agent Wynn never articulated that he asked him during that first interview about his criminal history. That Agent Wynn and Barbie both looked at the N-400 form that had been completed, and just said someone did because there are red check marks. But Officer Wynn, former Immigration Services Officer Wynn, did not specifically recall whether he had been the person to ask about the criminal history. What is undisputed are a couple of things that are critical. First of all, he was asked about it, and we know he was actually asked about it in May because Rusinski asked him to bring documentation about those offenses to the re-interview. And it was called a re-interview. But not on the initial form. The initial form, I thought you said, bring documentation. To the re-exam, that says. To the re-exam. The re-interview comes on the notice. That's exactly right, Your Honor. But you understand, the question that I ask, does the government believe that taking that information, a jury could reasonably find that he was in fact interviewed, no matter how narrow you cut interviews, that he was talked to about his criminal history, and he understood the government could say the jury would find, or could find, he understood re-interview means you've had your first interview, come back for another one. Absolutely. I thought his argument on the count one, I thought he says, I thought, did he say on November the 9th, that he didn't understand, I thought they make an argument that he didn't understand in English. That was the huge part of the argument in the district court. And they referred to it. And it seemed to be part here, too, doesn't it? Yes, I mean, he certainly, right, although I don't think that the legal argument on appeal is that he didn't understand English. I couldn't quite figure out what it was, to be honest with you, and I'm trying to figure it out now, to put that argument on the table. But you say, as far as he didn't understand English, you say what? I say Wynn testified that he had conversations with him and he understood English. What else did he do on that day? He also, on the day, on November 9th, he signed his name and he passed an English test. He passed an English test. He passed the English test. He did. And I think, you know, there's some attack on the adequacy of the English test, but the response to that is that Wynn testified that he had this whole relationship with him and he understood English. Well, let's just all go to the weight of the evidence. I'm sorry, Judge Agee? Let's go to the weight of the evidence. Right. And it was an argument that they could argue in the district court and certainly did. And the jury rejected that argument, that there was a language barrier that somehow caused him to be unknowingly have provided false information. By the way, how is that argument made if he didn't testify? How can somebody say he didn't really know what he was doing? It makes it very difficult, Your Honor. I don't know. I'm being serious. Right. No, I understand. He did not take the stand to say I was confused. He did not. I don't see how there can be an argument. I don't know whether there's any evidence from which you could even argue that he was confused. There's no evidence to say he was confused. No, and he didn't actually argue confusion. He argued that there was a language barrier, and he used the English test and said, you know, certain documents where his signature was slightly different or the person. But he never said there was a language barrier. The defendant himself never did, no. No. Well, that seems to take care of count one, doesn't it? I agree. And so because his defense says he couldn't understand what he was doing, he couldn't understand English. He doesn't say that. He never said that. He never testified to that. But the point is the jury could find that the officer said, oh, yes, he did understand English, and he passed the English test that very day. That's right. And in terms of the knowingly element, we also have the fact that he had just been arrested and charged with federal fraud offenses and didn't bother to tell them two and a half months later. You know, let's go to count two, which is the first interview issue, correct? Yes. Let me ask this, if you know. Why doesn't the government form say, have you ever been involved with any criminal activity, blah, blah, blah, that you haven't told us about? That would be a good question to ask, Your Honor. I'm just asking. Right. I'm just saying to them, I have no idea. You know, it's not a form. Doesn't that solve a lot of these problems? Sure. You know, my job as an appellate attorney is frequently to notice what might have made my job easier. Right. Right. But here. Let's go to the first interview question then. Yes. The question, as I remember it, is since you were first interviewed, have you been arrested, committed a crime, and all that? And he won't stay and get sat on conviction because he argues that May 31st was not an interview. Right. But you argue that it was, and the jury could so find because of what you've already said. Yes. Which is the note to bring documents next time you come and come back for your re-interview. We also have other testimony. McColgan, for example, testifies that Rusinski was the first person to interview Garcia. Barbie testifies that. Wynn testified that he was the second officer to interview Garcia. So we have multiple places in the record where there is testimony. I want to ask you something else. Do you think that Mr. Garcia gets to take advantage of and benefit from some technical argument about what is and is not a conviction? How does he get to even take advantage of that argument unless a guilty plea as a matter of law is not a conviction? You with me on that? I am. Not only if, maybe then, but otherwise. How does he actually get to say, I did earn a guilty plea, but if you go and look at Westlaw and read carefully and read the nuances, a guilty plea is not a conviction, when in fact the other half of his argument is he doesn't even understand English. Yes. I guess, Your Honor, my response to that is this. Unless he testified, I do not understand how he could make that argument. Okay. Now, if he testified that he was confused, then the jury would have that testimony to consider because it is a specific intent offense. He could have testified conviction. I plead guilty, but that would go to his knowing, his confusion. But he never said any of that. He did not. He did not. And in the absence of that testimony, I don't think he does have an argument. Unless, as a matter of law, he wins. You don't think he wins that? Yes. Yes, as long as, well, if we take out the fact that he was first interviewed in May. So we have to lose in all kinds of ways. I'm just looking at just what is and isn't a conviction issue. Right. To win that narrow issue, the only way he wins it on this record is if we decide as a matter of law. Right. Which would be contrary to this Court's decision in Benton. I didn't say we would. I understand. I just want to throw that out there. In 2008, it was our office, it was Benton, established that a guilty plea is a conviction triggering a higher level of proof or sort of a higher standard that one has to meet to withdraw the guilty plea. We've read your brief, and we'll let you take 10 seconds, 50 seconds to wrap up if you'd like. I appreciate that, Your Honor. The government requests that this Court affirm the judgment of the District Court. Thank you very much. Thank you. Mr. Heroy, you have, I'm going to give you three minutes. Your Honor, I know it's easy to say that this is just the USCIS website document. It's just a document that really doesn't have much import in this. But the fact is it's in direct violation of Rule 201B. It is not something whose accuracy cannot reasonably be questioned. It is not an accurate document, and we're setting a dangerous precedent here. So what exactly, I mean, we've gone over this before. What exactly is inaccurate about the document? Because the implication of that is that everything is part of the interview. Well, can you point to a page and a line on the particular page in the appendix that you say is inaccurate? Yes, Your Honor. Looking at 738.2, it says, During your nationalization interview, a USCIS officer will ask you questions about your application and background. You also take an English and civics test unless you qualify for an exemption or waiver. And the way it's structured, it gives the implication there that everything is part of the interview process and the government's right. It could, but it could also lead to the inference that the two sentences are separate and they're two different things, and you could have argued that. It could, Your Honor. Which you didn't do. That's correct, Your Honor, but I think we're dealing with a rule here that says we've got to have things whose accuracy cannot reasonably be questioned, and I think there's reasonable questions in everyone's minds here as far as whether or not this is accurate or whether or not it's misleading. Well, during that process, it is accurate to say that a USCIS officer is going to ask you questions. That's accurate. You'll also take an English and civics test. That's accurate. I think it's misleading, Your Honor. I think the structure of it would mislead a jury, and I think it's akin to whether or not a judge might in a certain trial take judicial notice of certain police department's lineup procedures or, you know, whatever else. You know, I think if we're talking about rules here, the rule is you follow Rule 201B. You take judicial notice of things whose accuracy cannot reasonably be questioned. But sometimes, even if we're right in part of that, judges can make errors, but we have harmless errors, too. We do have harmless errors, Your Honor, but I think when we're dealing with it, everyone submitted timelines left and right about, you know, they met at this time. There's interviews. There's not interviews. And we made our own, too. You may have, Your Honor, but I think interview and what it is and what it isn't was a crucial part of this case, and not only does that confuse the jury, but it also vouches for government witnesses. It discredits the defense lawyers. It's, you know, it's a judge stepping beyond his role as someone who calls balls and strikes or, you know, for a more relevant analogy with this trial. Do you have anything else you want to add other than judicial notice? Do you want to say anything else in your remaining time? No, Your Honor. Thank you. Okay. All right. Thank you very much. We're going to do this. We're going to adjourn court. Then we're going to step down and greet counsel, and then we're going to come back up for a few comments from the bench, and then we have some time, I think, Dean, we'll turn it over to you and maybe take some questions. You know, we can't answer any questions about the substance of what we did, but we'll be able to take some. We'll adjourn court and step down and greet counsel. Ms. Osborne, court is adjourned. Signed and diagnosed in the United States, Ms. Osborne.
judges: Dennis W. Shedd, Allyson K. Duncan, G. Steven Agee